UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ELIE AMAR,

                Plaintiff,

              MEMORANDUM AND ORDER
- against -                05-CV-03290 (RRM) (RML)

HILLCREST JEWISH CENTER,

                Defendant.

------------------------------------------------------------X

MAUSKOPF, United States District Judge.

Plaintiff Elie Amar sues his former employer, Defendant Hillcrest Jewish Center ("Hillcrest"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, and state and municipal law. Defendant now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted.

## BACKGROUND

### 1. The Complaint

As this is a motion to dismiss, the Court assumes the accuracy of the facts alleged in the complaint and draws all reasonable inferences in Amar's favor. See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).

The Complaint in this matter was filed on November 7, 2005[1] and arises in large part from Plaintiff's employment with Hillcrest Jewish Center. According to the Complaint,

---

[1] Amar commenced this action represented by counsel; he is now proceeding *pro se*.

1

Hillcrest hired Amar as its Education Director in 1988, pursuant to a three-year employment contract. Plaintiff alleges that at the time he was hired, Hillcrest advised that "his position was 'secure'... and that renewal contracts of 'three to five years' would be proffered."

Amar alleges that during the course of his employment, Hillcrest discriminated against him based on race (Hispanic), religion (Jewish) and national origin (Israeli) because of Amar's Sephardic Jewish ancestry. Plaintiff asserts that his problems arose soon after Raphael Gleich, an Ashkenazic Jew, was appointed Chairman of Hillcrest's board of Directors. He alleges that Gleich, inter alia, began to find fault with his work, berated him in front of the Board, spread falsehoods about him, criticized his accent, "intentionally degrad[ed]" and harassed him, treated him differently than other employees at Hillcrest not of the Plaintiff's race, religion or nationality, and denied him salary increases. Plaintiff alleges that despite a promise that his position was permanent, Hillcrest failed to renew his employment contract and he was ultimately "terminated" on July 31, 1992 and replaced by another individual of Ashkenazi Jewish descent.[2]

Amar further alleges in his Complaint that in the years between leaving Hillcrest in 1992 and filing his Complaint in 2005, he has had considerable difficultly finding a good job in education. He claims that with the exception of his failure to obtain one job in 2000, the fact that he has not received jobs for which he applied and/or interviewed is "not easily explained and points to something other than qualifications or mere coincidence as the reason." Without citing any specifics, Plaintiff concludes that his difficulty in obtaining employment "is due to defendant's giving negative references and defaming of plaintiff to other prospective employers."

---

[2] Defendant asserts that Amar was not fired but that his contract expired and was not renewed. For purposes of this motion, the Court assumes that Amar was terminated.

2

Based on these allegations, Plaintiff asserts six claims, including discrimination under Title VII and related state and city laws, as well as 42 U.S.C. § 1981, all arising out of his employment and termination. In addition, Plaintiff asserts claims of retaliation under Title VII and defamation under state law, both arising out of the alleged negative statements and references provided to prospective employers.

### 2. EEOC and SDHR Proceedings

In his Complaint, Plaintiff asserts that he has fully complied with all of the prerequisites to bringing this lawsuit under Title VII, and attaches a Right to Sue letter dated April 11, 2005 from the Equal Employment Opportunity Commission ("EEOC") together with the underlying Complaint of Discrimination which was filed on March 16, 2005 ("2005 Complaint"). The 2005 Complaint alleges that in 1993, Amar filed with the EEOC an earlier, unspecified claim (number 16G-930-521) against Hillcrest, and that "[f]rom that time and continuing until the present, [Hillcrest] has retaliated against him for filing that 1993 claim by giving negative references for various positions for which he applied."

Nowhere in his federal Complaint does he allege that he filed a claim in 1993 with the EEOC, and if so, when or for what, nor does he append to his Complaint a Right to Sue letter based on that claim. However, in an unsworn opposition to the instant motion, Plaintiff proffers a rambling and often incoherent and inconsistent narrative concerning his claims and his contacts with the EEOC and the New York State Division of Human Rights ("SDHR"), some dating as far back as 1993.[3] He also appends to his opposition papers what purports to be a typewritten

---

[3] The Court declines to convert this Motion to Dismiss into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(d), and thus declines to consider these materials in connection with the merits of the instant motion. However, as will be discussed more fully *infra*, these materials contain allegations that may be relevant to the equitable tolling of the conditions precedent to filing suit and thus, some of those allegations are recited here.

claim form filed with the SDHR on June 11, 1993, bearing the same number referenced in his 2005 EEOC Complaint, alleging discrimination in his employment with and termination by Hillcrest.

According to his opposition papers, Plaintiff claims that in February 1993, he went to the Equal Employment Opportunity Commission's ("EEOC") New York offices, where an EEOC employee reportedly told him that because his original contract with Hillcrest was through August 31, 1992, he had 300 days from that date (i.e. through July 26, 1993) to file his EEOC charge. Acting in part on this representation, Amar claims he filed a charge with the SDHR on June 11, 1993, 315 days after his July 31, 1992 termination but only 284 days after August 31, 1992. Amar claims that he never received a response to this 1993 filing.

In his opposition, Plaintiff also details with extensive documentary support his efforts to avoid litigation and seek redress for the alleged discrimination and termination in the years immediately following his employment with Hillcrest. Those efforts included contacting a United States Senator, several religious tribunals and organizations, and Hillcrest, both directly and through at least one attorney who wrote a lengthy letter to Hillcrest threatening suit. However, he does not provide any details as to what, if anything, he did to follow up on his alleged 1993 SDHR claim. He does indicate that at some unspecified time during this twelve-year time frame, he spoke to the EEOC and was told to wait for the SDHR to complete its investigation, and wrote letters, which he does not provide, to SDHR "as well as the Deputy Commissioner of New York State."

In 2005, Amar filed his 2005 Complaint, alleging that Hillcrest has retaliated against him continuously for filing a 1993 EEOC charge[4] by providing negative employment references, and was advised that the EEOC had no record of any claim made by him in 1993. In an October 2, 2006 letter to the Court, Amar's then-counsel said that the EEOC did not open a charge number for Amar's 1993 claim because the SDHR did not forward any claim to the EEOC.[5]

---

[4] The 2005 EEOC Complaint indicates that his 1993 claim was filed with the EEOC, not the SDHR.

[5] In connection with his attorney's motion to withdraw pursuant to Fed. R. Civ. P. 11., Amar also claimed that in 2005, an EEOC representative advised him that the SDHR must have committed fraud by destroying all traces of his 1993 SDHR claim, thereby explaining why Amar never obtained a resolution on the alleged earlier claim. Amar's attorney investigated these allegations and interviewed the EEOC representative that Amar spoke with, who indicated that no such statements were made. Rather, she indicated that the EEOC had no record on file for Amar's 1993 complaint, concluding that the SDHR never forwarded anything to the EEOC. In his motion to withdraw, the attorney indicated that "the allegations in this case are not supported and cannot be supported even with further investigation or discovery." The motion was granted by the Magistrate Judge.

## DISCUSSION

### 1. Discrimination

Amar first complains that Hillcrest unlawfully discriminated against him, in violation of Title VII, Section 1981, New York State Executive Law and the New York City Administrative Code, in connection with what he terms as his unlawful "termination" in 1993. See Complaint, Counts One - Four. Hillcrest asserts that each of these claims is time-barred. The Court agrees that Amar's claims under Section 1981 and both State and City law must be dismissed. However, while Amar's claim under Title VII appears time barred, it may be subject to principles of equitable tolling. Each claim will be discussed separately.

#### a. Section 1981 Claim (Count Two)

Claims made pursuant to Section 1981 are subject to the state statute for personal injury claims, in this case, New York's three-year limitations period for personal injury actions. See N.Y. Civ. Prac. L. & R. § 214(5) (McKinney 2003); Tadros v. Coleman, 898 F.2d 10, 12 (2d Cir. 1990). The statute began running when Amar had notice of the act that allegedly caused his injury, that is, on July 31, 1992, when his employment was terminated. Frank v. N. Y. State Elec. & Gas, 871 F. Supp. 167, 172-73 (W.D.N.Y. 1994). Filing administrative charges does not toll the statute of limitations for purposes of § 1981. See Cates v. Trans World Airlines, Inc., 561 F.2d 1064, 1072-73 (2d Cir. 1977). Amar did not file his complaint in federal court until almost thirteen years after Hillcrest discharged him and he gives no reasons to justify overlooking his failure to file suit in a timely manner. This claim is therefore time-barred, and is dismissed with prejudice.

#### b. State and City Claims (Counts Three and Four)

Amar's unlawful discrimination claims under the New York State Executive Law and the New York City Administrative Code are also untimely. Both claims have a three-year statute of limitations, see N.Y. Civ. Prac. L. & R. § 214(2) (McKinney 2003); N.Y.C. Code § 8-402(b), and in both cases, the statute began to run from Amar's termination in 1992. See Porter v. N. Y. Univ. Sch. of Law, No. 99 Civ. 4693 (TPG), 2003 WL 22004841, at *9 (S.D.N.Y. Aug. 25, 2003). Because Amar filed this suit roughly ten years after the statutes of limitations expired, these claims must be dismissed with prejudice.

### c. Title VII Discrimination Claim (Count One)

#### i. The Prerequisites to Suite

It is well-settled that before a plaintiff can bring a Title VII lawsuit, he must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory acts, 42 U.S.C. § 2000e-5(e), and receive a right-to-sue letter from the EEOC. See, e.g., Collier, 2007 WL 1452915, at *6-7; Canty v. Wackenhut Corr. Corp., 255 F. Supp. 2d 113, 117 (E.D.N.Y. 2003). Although receipt of a right-to-sue letter is a waivable precondition to suit, rather than a jurisdictional requirement, this exhaustion of EEOC administrative remedies stands as "an essential element of Title VII's statutory scheme," and is an element with which Hillcrest can insist that Amar comply. Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotation omitted). Moreover, any lawsuit seeking to redress discriminatory conduct under Title VII must be instituted within 90 days of receiving such right-to-sue letter. See 42 U.S.C. § 2000e-5(e)(1), (f)(1); Harris v. City of New York, 186 F.3d 243, 247 n.2 (2d Cir. 1999); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 712 (2d Cir. 1996). Hillcrest alleges that,

with respect to Amar's claims for discrimination under Title VII arising from his 1993 termination, Amar failed to satisfy all of these prerequisites to suit. Hillcrest is correct.

The Complaint, even when viewed in the light most favorable to Amar, does not plead receipt of a right-to-sue letter with respect to any administrative claim related to his 1993 termination. Indeed, it is undisputed that Amar never received one.[3] It is also beyond dispute that the instant action was filed in 2005, some twelve years after the alleged discriminatory termination took place. Given the importance of these procedural prerequisites to suit, Plaintiff's Title VII discrimination claim cannot stand as pled in his Complaint as Amar has not demonstrated that he exhausted his administrative remedies.

### ii. Equitable Tolling

However, Amar claims for the first time in an unsworn, rambling, and often inconsistent *pro se* opposition to the instant motion that he did, in fact, file a charge with SDHR on June 11, 1993, and produces, also for the first time, what purports to be the SDHR complaint. He claims that the SDHR failed to pursue his claim, and may have even committed fraud by destroying all traces of his complaint. As such, he argues that he is not at fault for his inability to meet the prerequisites to suit and that his claims should not be barred.

The Supreme Court has stated that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World

---

[3] Amar's assertion that his April 2005 right-to-sue letter "cover[s]" the alleged 1992 discrimination against him is incorrect. The April 2005 letter was issued in response to Amar's March 2005 EEOC charge and thus only includes complained-of acts that took place up to 300 days prior to that charge. 42 U.S.C. § 2000e-5(e)(1). To the extent that Amar's 2005 charge addressed his 1992 termination, therefore, the Court would be compelled to dismiss Amar's discrimination claim; the claim would not be viable because the discrimination charge on which it was based was well outside the 300-day period within which a Title VII complainant must submit his charge to the EEOC or the appropriate state agency.

8

Airlines, Inc., 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1988). Pietras v. Board of Fire Comm'rs., 180 F.3d 468, 474 (2d Cir. 1999) (citing Zipes). The essence of equitable tolling is that the statute of limitations will not run against a plaintiff unaware of his cause of action. Cerbone v. Int'l. Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985). The doctrine applies in three general instances: (1) when an employer's actively misleading conduct is responsible for the employee's ignorance of his cause of action; (2) when tolling of the time bar might be permitted as a matter of fairness; and (3) when extraordinary circumstances have prevented the employee from exercising his rights. Miller v. Int'l. Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir.), cert. denied, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122, reh'g denied, 474 U.S. 1015, 106 S.Ct. 552, 88 L.Ed.2d 479 (1985). When considering equitable tolling, a court will look at whether the party "(1) has acted 'with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting and citing Chapman v. ChoiceCare Long Island Term Disability, 288 F.3d 506, 512 (2d Cir. 2002)). Equitable tolling should apply only "in [ ] rare and exceptional circumstance[s]." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

Here, Amar has not shown that he acted diligently, or that the circumstances are so extraordinary as to warrant tolling of Title VII's filing deadlines. First, none of the materials provided by Amar are sworn, and all contain self-serving statements that are often inconsistent and incoherent. Second, even if Plaintiff is to be believed, he proffers no reason why he waited some twelve years after his termination to file his lawsuit. During that period, he repeatedly and consistently contacted Hillcrest, and pursued other avenues of redress, including through

religious tribunals and organizations, among others. Indeed, during this period, he was represented by at least one attorney who contemplated suing Hillcrest but sought settlement instead. Finally, nowhere in his opposition does he provide an explanation as to why, for the first time in opposition to the instant motion, he was able to produce what purports to be a copy of his alleged 1993 SDHR filing. Accordingly, equitable tolling is not warranted.[6]

## 2. Retaliation

Amar also alleges that Hillcrest retaliated and continues to retaliate against him for filing a complaint with the SDHR in 1993 by providing negative employment references over a twelve-year period, in violation of Title VII, the New York State Executive Law and the New York City Administrative Code. See Complaint, Count Five. Hillcrest seeks dismissal of these claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hillcrest's motion is GRANTED.

In assessing a complaint under Rule 12(b)(6), the Court must accept the complaint's factual allegations as true, and construe the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences that party's favor. Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). The Supreme Court has clarified that a complaint

---

[6] Plaintiff's claim also raises a second issue requiring application of the principles of equitable tolling. Assuming Plaintiff did file with the SDHR on June 11, 1993, this would have occurred 315 days after his termination, rendering his discrimination claim untimely. In his unsworn opposition, Amar asserts that he should be excused for any such delay based on his reliance on an EEOC officer's explanation that the 300-day period did not start until August 31, 1992, the last day of Amar's original contract with Hillcrest. By this measure, his alleged filing would be timely – only 284 days from this date. It is well-settled that the 300-day period begins when an aggrieved employee had definite notice of his termination, not when he was actually discharged. See id.; Syrkin v. State Univ. of N.Y., No. 04-CV-4336(FB)(RML), 2005 WL 2387819, at * 5 (E.D.N.Y. Sept. 29, 2005). Thus, assuming Amar's account to be true, the EEOC employee misstated the law. While erroneous advice about filing deadlines, when substantiated, can be the basis for equitable tolling, see Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984), the Court declines to toll this time period for same reasons set forth above.

10

must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1973-74, 167 L.Ed.2d 929 (2007). Moreover, the pleader has an obligation to provide grounds for his entitlement to relief that requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 1964. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir. 2007).

To satisfy federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Under this scheme, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." Id. at 511. Rather, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (citation and internal quotation marks omitted). "Only a statement of facts so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under 12(b)(6)." Patane v. Clark, 508 F.2d 106, 116 (2d Cir. 2007). Indeed, in employment discrimination cases, the Second Circuit has repeatedly warned that the pleading requirements are very lenient, even *de minimus*. Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003).

To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action. Feingold v. New York, 366

F.3d 138, 156 (2d Cir. 2004). Retaliation claims under Title VII and New York State and City laws are evaluated using the same analytical framework. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000) (citing Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n. 1 (2d Cir. 1999) (state law); Landwehr v. Grey Adver. Inc., 211 A.D.2d 583, 583 (N.Y. 1st Dep't 1995) (city law)). Providing negative employment references to a prospective employer can form the basis for a retaliation claim. See, e.g., Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 179 (2d Cir. 2005).

Amar's complaint falls far short of pleading facts sufficient to make out a claim for retaliation, even under the liberal notice pleading requirements allowed in employment discrimination cases and drawing all inferences in favor of the Plaintiff. First, the complaint does not allege the protected activity at issue, nor does it assert that the protected activity was known to Hillcrest. Patane, 508 F.3d at 115. Second, Plaintiff merely alleges that on several occasions over a span of more than a decade, he either "appeared to have secured employment" which ultimately did not result in a signed employment contract, or had "promising opportunities in which Plaintiff made a favorable impression" but which did not lead to job offers. In his complaint, Amar posits that this difficulty in securing employment "is not easily explained and points to something other than qualifications or mere coincidence as the reason." The reason, he concludes, is due to Defendant's "giving negative references and defaming of Plaintiff to other prospective employers." Plaintiff does not even assert that a negative reference was, in fact, provided to any prospective employer, but merely hypothesizes that the reason he did not get hired must be due to Hillcrest's retaliatory acts. As such, Plaintiff has failed "to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965 (citing 5 C. Wright & A. Miller,

Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).[7]

### 3. Defamation

Finally, Hillcrest moves to dismiss Amar's state law defamation claim. See Complaint, Count Six. Hillcrest's motion is GRANTED.

To state a claim for defamation under New York law, Plaintiff must establish: "(1) that a defamatory statement of fact was made concerning [plaintiff]; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory per se, i.e. it disparaged the plaintiff in the way of his or her office, profession or trade." Muzio v. Inc. Vill. of Bayville, No. 99 Civ. 8605, 2006 U.S. Dist. LEXIS 1886, 2006 WL 39063, at *8 (E.D.N.Y. Jan. 3, 2006).

Defamation actions in federal court are governed by the liberal pleading requirements of Rule 8, not the stringent state law pleading requirements urged on the Court by Hillcrest. See Odom v. Columbia Univ., 906 F. Supp. 188, 196-97 (S.D.N.Y. 1995) (citing Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986)) (unlike a defamation complaint in state court, a

---

[7] Moreover, because Plaintiff does not specify the dates on which any alleged negative employment reference was provided, this Court cannot ascertain whether Plaintiff's retaliation claims are timely. As discussed above, Title VII requires that a charge of discrimination be filed with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. §2000e-5(e). At least one court has held that a negative employment reference is a discrete occurrence, actionable at the time that it was provided to the potential employer, and not saved from the 300-day filing requirement under the so-called "continuing violation doctrine." Bascom v. Fried, No. 07 Civ. 677, 2008 U.S. Dist. LEXIS 25466 (E.D.N.Y. Mar. 31, 2008) ("Bascom II"). Here, Amar filed a complaint with the EEOC on March 16, 2005. Thus, only negative employment references provided within 300 days of that date arguably could, if properly pled, form the basis of a cause of action for retaliation.

13

federal complaint alleging defamation "is not required to contain the defamatory statements in haec verba as long as it affords defendant 'sufficient notice of communications complained of to enable him to defend himself'"). Under the federal standard, "a pleading is sufficient only if it "adequately identifies the purported communication, and an indication of who made the statement, when it was made, and to whom it was communicated." Camp Summit of Summitville, Inc. v. Visinski, No. 06 Civ. 4994, 2007 U.S. Dist. LEXIS 28496, 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16, 2007) (quoting Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000)). "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." Kelly, 806 F.2d at 46 (citations omitted). Thus, "[m]ere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim." Scholastic, 124 F. Supp. 2d at 849; see also Ford v. Clement, 834 F. Supp. 72, 78 (S.D.N.Y. 1993) (holding that allegations of defamation were insufficient where they failed to "give [defendant] any notice whatsoever of the communications at issue"), affd, 29 F.3d 621 (2d Cir. 1994).

Here, Plaintiff falls short of maintaining a claim for defamation, even under the more forgiving federal standard. While claiming that the alleged defamation took place repeatedly for over a decade, nowhere in his Complaint does Plaintiff allege the approximate date of any statement that was allegedly made, who in particular made the statement and to whom, or any description whatsoever of the statements that were made. Amar's allegations do not provide sufficient notice to allow Defendant to defend against defamatory statements that are alleged to

have occurred on multiple occasions, to multiple potential employers, over the course of more than a decade.[8] As such, Plaintiff's defamation claim is dismissed with prejudice.

### 4. Leave to Amend

When addressing a *pro se* complaint, a district court should not dismiss without leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)). Although Plaintiff was represented by counsel at the time his complaint was filed, he filed *pro se* his opposition to the instant motion. Viewing that opposition liberally, and mindful of the care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations, see, e.g., Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 1995), this Court will accord Plaintiff an opportunity to seek leave of this Court to move to amend his complaint pursuant to Fed. R. Civ. P 15(a)(2) only with respect to Counts One and Five, which encompass his claims for discrimination and retaliation under Title VII.

With respect to his claim for discrimination arising out of the terms of his alleged unlawful termination (Count One), the Court will allow Plaintiff to seek leave to amend for the limited purpose of demonstrating that a right-to-sue letter has been obtained, or that there exists sufficient grounds for equitable tolling as demonstrated through supporting affidavits and any other materials. With respect to any retaliation claim (Count Five), Plaintiff must plead

---

[8] Moreover, Plaintiff's claim may be time-barred in whole or in part. In New York, a plaintiff has one year to file a defamation action. N.Y. Civ. Prac. L. & R. § 215(3) (McKinney 2008). Because Amar did not file his Complaint until July 12, 2005, defamation claims arising from remarks made more than one year before then are time-barred. See, e.g., Collier v. Boymelgreen Developers, No. 06-CV-5425(CJ), 2008 WL 835706, at *9-10 (E.D.N.Y. Mar. 28, 2008). As Plaintiff does not allege with any specificity the dates of the alleged defamatory statements, this Court cannot ascertain if his any of part of his claim falls within the statute of limitations. However, it is clear that any defamatory remarks made on or before July 11, 2004 would be time-barred.

sufficient facts to make out each of the elements of such claim and demonstrate a right to relief beyond mere speculation, identifying with clarity the protected activity, the specific retaliatory acts (i.e., negative references) complained of, and the causal connection between the protected activity and Defendant's illegal conduct.

Should Plaintiff wish to seek leave to amend, he shall file his motion, together with a proposed Amended Complaint and the necessary supporting affidavits, memorandum of law, and other supporting materials, within 45 days of the date of this Order.

## CONCLUSION

For the foregoing reasons (1) Plaintiff's discrimination claims under § 1981, the New York State Executive Law and the New York City Administrative Code (Counts Two, Three and Four) are DISMISSED with prejudice; (2) Plaintiff's state law defamation claim (Count Six) is DISMISSED with prejudice; (3) Plaintiff's claims for discrimination and retaliation brought pursuant to Title VII, Executive Law § 296, and the New York City Administrative Code (Counts One and Five) are DISMISSED without prejudice in order to accord Plaintiff the opportunity to seek leave of this Court to move to amend his complaint pursuant to Fed. R. Civ. P 15(a)(2). Any motion seeking leave to amend must be consistent with the provisions of this Order and must be filed within 45 days of the date of this Order. The Clerk of the Court is directed to send a copy of this Order to Plaintiff *pro se*.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2008

ROSLYNN R. MAUSKOPF
United States District Judge